## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BROTHERHOOD OF RAILROAD SIGNALMEN, | ) ) ) ) |
| Plaintiff, | ) ) No. 4:20-CV-1209 RLW |
| v. | ) ) ) |
| BNSF RAILWAY COMPANY. | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant BNSF's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 14). This matter is fully briefed and ready for disposition. The Court finds that it lacks subject matter jurisdiction and dismisses this action.

## LEGAL STANDARD

The Federal Rules of Civil Procedure authorize a motion to dismiss a complaint due to a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proving subject matter jurisdiction is on the plaintiff. *V S Ltd. Partnership v. Department of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)); *Iowa Voter All. v. Black Hawk Cty.*, 515 F. Supp. 3d 980, 987 (N.D. Iowa 2021).

When a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "'no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating ... the merits of the jurisdictional claims.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013)

(quoting *Osborn*, 918 F.2d at 729–30 & n. 6). Under a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the *issue to determine whether in fact subject matter jurisdiction exists*.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (emphasis added) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *Iowa Voter All.*, 515 F. Supp. 3d at 987–88.

## BACKGROUND

### A. National Railway Adjustment Board, Award 43884

Defendant BNSF Railway Company ("BNSF") dismissed Darren Drum for acts of misconduct that occurred on July 20, 2017. Plaintiff Brotherhood of Railway Signalmen ("BRS") appealed Drum's dismissal to arbitration before the National Railroad Adjustment Board, Third Division (hereinafter "Board"). In Award 43884 (ECF No. 1-1, hereinafter "Award"). The Board determined that Drum had conducted several acts of misconduct. However, the Board determined that dismissal was an excessive discipline given Drum's 20 years of service. The Board reinstated Drum to service but imposed the following limits:

> [Drum] shall be returned to work without compensation, benefits or credit for his time away from BNSF. His return to work shall be subject to medical review by the Carrier's designated medical professional. In addition, at the discretion of the Carrier, [Drum] shall be required to complete EAP [Employee Assistance Program] counseling. His return shall be under a Level S 30-day record suspension with a one-year review period.

(ECF No. 1-1). The Board ordered BNSF to make the Award "effective" within 30 days of the Award's post-marked date. (*Id.*)

### B. Reinstatement Process

#### 1. In General

For reinstatement, employees must pass various rules testing (depending up on their positions) and a medical fitness for duty test, which can have multiple steps, depending upon the employee's medical history. Reinstatement may also involve drug screens, EAP procedures, or other tests to ensure the employee is fit to return to service.

#### 2. Drum's Reinstatement

The Award ordered that Drum be reinstated. To be reinstated, Drum had to complete medical fitness-for-duty exams and EAP clearances, as expressly contemplated by the Award. The following events occurred in this case:

On January 28, 2020, BNSF received the postmarked Award. On March 30, 2020, BNSF emailed Drum a reinstatement letter. (ECF No. 15-2). On April 1, 2020, BNSF sent Drum the reinstatement paperwork. (ECF No. 15-3). On April 17, 2020, BNSF received notice that Drum passed his DOT[1] exam. (ECF No. 15-4). The same day, BNSF issued a letter to Drum reminding him of all the steps that must be completed before he could be reinstated, including but not limited to exams, field testing, medical clearance. (ECF No. 15-5). On April 23, 2020, BNSF cleared Drum for employment. (ECF No. 15-6). However, BNSF rescinded Drum's clearance on the same day because he had not been cleared by EAP. (ECF No. 15-7). On May 20, 2020, BNSF received Drum's EAP clearance and the return to work was reissued. (ECF No. 15-8). BNSF sent Drum an email regarding his return to work on May 21, 2020. (ECF No. 15-9). On May 26, 2020, Drum submitted his exercise-of-seniority paperwork to Signal manpower, which had an effective report date of June 1, 2020. On June 1, 2020, Drum reported for duty.

---

[1] Department of Transportation.

### 3. Dispute Regarding Back Pay

In June 2020, BRS emailed BNSF, contending BNSF had not fully compensated Drum, as contemplated by the Award. (ECF No. 15-10). BRS sought payment for Drum's "lost wages beginning 30 days from the date of the board award until the date he actually was allowed back on the property." (*Id*.) BNSF indicated that it would be willing to pay Drum back pay from the 30th day after the award until the date the BNSF started the reinstatement process. (*Id*.) After some discussion, the parties' negotiations ended on August 27, 2020. (*Id*.) Thereafter, BRS field this action in federal court. (ECF No. 1). On October 6, 2020, BNSF filed a request for interpretation with the Board that issued the Award. (ECF No. 15-11). The National Railroad Board of Adjustment referred the matter for interpretation. (*Id*.)

## **DISCUSSION**

### I.     Railway Labor Act

Congress passed the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188, "[t]o promote stability in labor-management relations." *Pittari v. American Eagle Airlines, Inc.,* 468 F.3d 1056, 1060 (8th Cir.2006) (citing *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252 (1994)). Under the RLA, a dispute is classified as either major, involving the creation of new contractual rights, or minor, involving the interpretation and enforcement of existing Collective Bargaining Agreements (CBAs). *See Consol. Rail Corp. v. Ry. Labor Executives Ass'n,* 491 U.S. 299, 302, 305 (1989) (*Conrail*). Stated differently, minor disputes concern "the meaning of an existing collective[-]bargaining agreement in a particular fact situation." *Carpenter v. Nw. Airlines, Inc.*, No. CIV.00-2490 ADM/AJB, 2001 WL 1631445, at *1 (D. Minn. June 7, 2001). "Major" disputes, on the other hand, "relate to the formation of collective [bargaining] agreements or efforts to secure them," such as disputes concerning "rates of pay, rules or working conditions."

*Norris,* 512 U.S. at 252, 114 S.Ct. 2239 (internal quotation marks omitted). In sum, "major disputes seek to create contractual rights, minor disputes to enforce them." *Id.* at 253, 114 S.Ct. 2239; *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 654 (D. Minn. 2007).

The distinction between "minor" and "major" is "important when establishing jurisdiction because minor disputes must be submitted to binding arbitration." *Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe R.R.,* 270 F.3d 637, 638–39 (8th Cir. 2001) *(BMWE).* Aggrieved employees "'may not resort to the courts in the first instance,'" if their complaint involves only a "minor" dispute. *Smith v. American Airlines, Inc.,* 414 F.3d 949, 952 (8th Cir. 2005) (quoting *Penn R. Co. v. Day,* 360 U.S. 548, 552 (1959)). Instead, "[u]nder the RLA, minor disputes are subject to mandatory arbitration before an adjustment board which has primary jurisdiction to construe the collective bargaining agreement." *Id.* On the other hand, if the dispute is "major," the "'the parties are obligated to maintain the status quo' while they pursue 'a lengthy process of bargaining and mediation.'" *United Transp. Union v. Kansas City Southern Ry. Co.,* 172 F.3d 582, 585 (8th Cir.1999) (quoting *Conrail,* 491 U.S. at 302). In addition, if doubt arises about the classification of a dispute, the dispute is also considered to be minor. *See Jenisio v. Ozark Airlines, Inc. Retirement Plan,* 187 F.3d 970, 973 (8th Cir. 1999); *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638–39 (8th Cir. 2001); *Bloemer v. Nw. Airlines, Inc.,* 401 F.3d 935, 939 (8th Cir.2 005); *BMWE,* 270 F.3d at 639 ("[I]f doubt arises about the classification of a dispute, the dispute is also considered to be minor."); *United Transp. Union,* 172 F.3d at 588 ("'[W]hen the surrounding circumstances are ambiguous, the court's favor construing the dispute as minor.'") (quoting *Alton & Southern Lodge No. 306 Brotherhood Ry. Carmen v. Alton & Southern Ry.,* 849 F.2d 1111, 1113 (8th Cir. 1988). In light of this presumption, the Eighth

Circuit Court of Appeals has reiterated that the party asserting that the dispute in question is "minor" "shoulders a 'relatively light burden' in establishing exclusive arbitral jurisdiction under the RLA." *Jenisio,* 187 F.3d at 973 (quoting *Schiltz v. Burlington N.R.R.,* 115 F.3d 1407, 1414 (8th Cir. 1997)); *Bhd. of Maint. of Way Emps. Div. of Int'l Bhd. of Teamsters v. Union Pac. R. Co.*, 475 F. Supp. 2d 819, 835–36 (N.D. Iowa 2007).

The line between major and minor disputes is undoubtedly a fine one. *Bhd. of Maintenance of Way Employees,* 270 F.3d at 639 ("there is no bright line to differentiate between major and minor disputes"). This is due, in part, to the fact that the terms "major" and "minor" do not appear in the RLA itself, but rather are "judicially created nomenclature for [certain] statutory categories." *United Transp. Union v. Kan. City S. Ry. Co.,* 172 F.3d 582, 585 n. 1 (8th Cir.1999). Accordingly, deciding whether a dispute is major or minor is "a question of degree and turns upon the facts in each case." *Id.* at 586.

The RLA establishes a mandatory arbitral regime for all "minor" disputes. 45 U.S.C. § 184; *Pittari v. Am. Eagle Airlines,* 468 F.3d 1056, 1060 (8th Cir.2006). The RLA, therefore, preempts federal subject-matter jurisdiction over such disputes. *See id.* at 1060; *Bhd. of Maintenance of Way Employees v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 639 (8th Cir.2001); *Gilmore v. Nw. Airlines, Inc.*, 504 F. Supp. 2d 649, 653 (D. Minn. 2007).

The RLA instructs that Board awards are "final and binding upon both parties to the dispute." 45 U.S.C. § 153 First (m). Nonetheless, the RLA contemplates that carriers will not always comply with the Board's awards. *Bhd. of Locomotive Engineers & Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 822 F. Supp. 2d 793, 798 (N.D. Ill. 2011). Accordingly, the RLA provides winning parties with an enforcement mechanism in the event a losing party fails to comply with the terms of the award. 45 U.S.C. § 153 First (p).

Pursuant to 45 U.S.C. § 153 First (p), "[i]f a carrier does not comply with [a Board] order ... within the time limit in such order, the petitioner ... may file in the District Court ... a petition setting forth briefly the causes for which he claims relief, and the [Board's] order." District courts are empowered by the RLA to enforce or set aside the Board's order. 45 U.S.C. § 153 First (p).

## II. Because this is a minor dispute, subject-matter jurisdiction is preempted

BNSF argues that BRS's claims cannot be addressed without reference to the CBA and, accordingly, they are minor disputes preempted by the RLA. The Court agrees.

As stated, the RLA states that an enforcement action can be brought in federal court when "a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order …" 45 U.S.C. § 153, first (p).  BRS argues that the failure to comply with the Award's effective date cannot be considered a minor dispute because it would "swallow the RLA's statutory enforcement mechanism entirely."  (ECF No. 25 at 11).  BRS contends that such an interpretation would force the parties into "an endless loop of perpetual arbitration when carriers violate awards." (*Id*.)  Rather, BRS notes that the statute requires carriers to comply by the effective date, and "[Board] procedures say the effective date is 30 days from the date the Award is postmarked." (*Id*.)  BRS contends "30 days is 30 days—and there is no ambiguity or room for interpretation." (*Id*.)  BRS urges the District Court to enforce the Award pursuant to 45 U.S.C. § 153 because BNSF did not comply with the effective date. (*Id*.)  Further, BRS argues that the Court should not enter into a *Conrail* analysis and consider whether the Carrier's interpretation of "30 days" is arguable. (ECF No. 25 at 12).   BRS contends that there can be no disagreement regarding the Award's meaning and, therefore *Conrail* is not implicated.  (ECF No. 35 at 12 (citing *Bhd. of Locomotive Engineers & Trainmen v. Burlington N. Santa Fe Ry. Co.*, 925 F. Supp. 2d 1252, 1257 (D. Wyo.)).

The crux of the issue presented before the Court is whether the Board's order is ambiguous about the conditions upon which Drum would be reinstated, particularly the Court can fashion a back pay award for any delay in reinstating Drum. If the order is ambiguous on that question, then the Court agrees with BNSF that the Court should remand to the Board so that it can clarify its order. But if the order is unambiguous on the issue regarding conditions of reinstatement, then the Court should rule in favor of petitioners and enforce it as written under § 153 First (p). *See Bhd. of Locomotive Engineers & Trainmen*, 925 F. Supp. 2d at 1255.

Where "an arbitration award is too ambiguous to be enforced, as 'when the award fails to address a contingency that later arises or when the award is susceptible to more than one interpretation,' the district court should if possible send the matter back to the original arbitration panel for clarification rather than put the parties to the expense of starting from scratch with a new arbitration by a new panel." *Bhd. of Loco. Eng'rs and Trainmen v. Union Pac. R.R.,* 500 F.3d 591, 592 (7th Cir.2007) (quoting *Green v. Ameritech Corp.,* 200 F.3d 967, 977 (6th Cir.2000)). "That said, ambiguities manufactured by a party seeking to use them to invalidate an award are not a ground for a court's refusal to enforce an award." *Bhd. of Locomotive Engineers & Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 822 F. Supp. 2d 793, 798 (N.D. Ill. 2011) (citing *Bhd. of Loco. Eng'rs and Trainmen,* 500 F.3d at 593 (7th Cir. 2007)).

Admittedly, BNSF did not timely commence Drum's reinstatement,[2] but the Court's analysis does not end there. The Award states that Drum is not to receive any back pay and

---

[2] The Court, nevertheless, agrees that it is arguable whether the Award's use of the word "effective" requires that Drum be reinstated within 30 days, given the number of examinations and procedural hoops mandated by the Award and the historically protracted reinstatement process. *See* ECF No. 15 at 11. As noted by James Rhodes, BNSF's Manager of Labor

requires Drum to complete a medical review and EAP counseling.  The Award also requires that BNSF "make effective" the Award within 30 days, and does not use the term "reinstatement".  Thus, BRS's request for a back pay award includes several other related issues that were not contemplated by the Board's Award, precisely because the Award precluded a back pay award.  The Board did not contemplate the amount of a back pay or whether back pay would be offset or mitigation by Drum's other employment, if any.  The Court holds that the requested relief by BRS constitutes a new dispute regarding whether and to what extent Drum is entitled to back pay, in keeping with the terms of the CBA.  The Court hereby remands this dispute over the amount of back pay to the Board for deliberations related to these issues of first impression in this dispute.  Because the dispute is minor and subject to arbitration, the Court dismisses the complaint for lack of subject matter jurisdiction. *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 639 (8th Cir. 2001).

BRS relies heavily on *Bhd. of Locomotive Engineers & Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 822 F. Supp. 2d 793 (N.D. Ill. 2011) in support of its argument that this Court has subject matter jurisdiction over the interpretation of the Award and that "post-award conduct is a separate dispute." (ECF No. 25 at 8).  In that case, the railroad argued that the union's "enforcement action is actually a new dispute over the nature of the parties' usual and customary procedures' regarding reinstatement" and should be sent back to the Board. *Bhd. of Locomotive Engineers & Trainmen, Gen. Comm. of Adjustment, Cent. Region*, 822 F. Supp. 2d at 799 (internal citations omitted).  The District Court held that the parties'

---

Relations, there were at least 4 occasions since 2016 where the time from signed arbitration awarded to the date the employee was actually back engaged in his prior service ranged from 81 to 92 days. (ECF No. 15-1, ¶8).  In each of those cases, the arbitration award included the "make effective within 30 days language", yet BRS did not object that BNSF was in violation of the terms of the reinstatement award.

dispute was not a new and separate dispute because the railroad "failed to comply with the terms of the Award," causing the union's cause of action to enforce the award with the District Court to accrue. *Id*. The District Court noted that the railroad did not comply with the terms of the award: "Nowhere in its submissions does Union Pacific allege that it attempted to reinstate [the employee] and pay him for time lost within the 30–day time frame ordered by the Board in Award No. 27134." *Id.* at 800. In addition, the District Court held that the award was not so vague as to be unenforceable and would not be remanded to the Board. The railroad argued that the parties' dispute should be classified as a dispute as to the interpretation of the Award and that it should therefore be remanded to the Board for further proceedings pursuant to 45 U.S.C. § 153 First (m). *Id.* at 801. The District Court, however, found that the Award was not ambiguous and was enforceable by the District Court: "Having failed to comply with the Award by the deadline specified, Union Pacific now asks the Court to ignore the terms of the Award and to remand the dispute back to the [Board] due to an ambiguity that appears to have been manufactured." *Id.* at 802.

At first glance the instant case seems analogous to *Bhd. of Locomotive Engineers & Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, but the Court finds several distinctions that mandate a different result. In *Bhd. of Locomotive Engineers*, the Board's Award required the railroad to provide back pay to make the employee whole. *Id.* at 799. Conversely, the Award in this case expressly forecloses a back pay award. Although BRS tries to disregard these differences as "trivial ambiguities" (ECF No. 25 at 8), these differences bear upon the essence of the Award, creating an entirely different dispute. That is, the relief sought in the instant action is in direct contravention of the Award fashioned by the Board, as

presently before the Court.  Thus, the Court finds *Bhd. of Locomotive Engineers* inapposite and not determinative of the issues before the Court.

Finding that the dispute in this lawsuit is "minor," the Court grants BNSF's Motion to Dismiss, dismissing this action for lack of subject matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BNSF's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 14) is **GRANTED**.  An appropriate Order of Dismissal is filled herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 10) and Defendant's Motion to Stay Proceedings on Plaintiff's Motion for Summary Judgment (ECF No. 16) are **DENIED** as moot.

Dated this 22nd day of September, 2021.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**